UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPPENHEIMER & CO., INC.,

    Plaintiff,

v.                                                                              Case No. 05-70345

CNA GLOBAL SPECIALTY LINES;                          HONORABLE AVERN COHN
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA; JOSEPH POST; and
ALICIA STANWICK,

    Defendants.

_____/

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS[1]**

### I. Introduction

This is an insurance case. Plaintiff Oppenheimer & Co. (Oppenheimer) is suing Defendants CNA Global Specialty Lines (CNA), National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), Joseph Post and Alicia Stanwick for a declaratory judgment.[2] Oppenheimer seeks an order from the Court that CNA and National Union are obligated to provide liability coverage to Oppenheimer under a financial institution bond that CNA issued to Oppenheimer.

---

[1] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

[2] On June 27, 2005, the parties stipulated to substitute Continental Casualty Co. for CNA.

Before the Court is CNA's motion to dismiss under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion is GRANTED and this case is DISMISSED.

## II. Background

### A. Factual Background[3]

#### 1. State Court Case

Joseph M. Post and Alicia L. Stanwick (state plaintiffs) sued Oppenheimer and David E. Locklear (Locklear) in Wayne County Circuit Court (state case). The state plaintiffs assert several claims of fraud, conversion, and negligence against Oppenheimer and Locklear. The state plaintiffs say that Locklear fraudulently transferred securities from other brokerage accounts to Oppenheimer accounts, which he created without their consent or knowledge. They also say that Locklear liquidated these securities and transferred the funds to an account with check writing privileges. Greg Cutler (Cutler), a friend of the state plaintiffs, allegedly forged checks in the state plaintiffs' names and stole the monies in the accounts. Cutler says that he acted upon Locklear's instructions, while Locklear says that he followed Cutler's instructions.

#### 2. Insurance Coverage

CNA issued a financial institution bond to Oppenheimer, covering the period of January 1, 2003, to January 1, 2004. The bond "provides coverage for, <u>inter alia</u>, loss resulting directly from dishonest or fraudulent acts committed by an employee acting alone or in collusion with others." Def. Br. at 2. The Fidelity Insuring Agreement (Insuring Agreement (A)), specifically provides:

---

[3] The factual background is gleaned from the amended complaint and the parties' briefs.

**FIDELITY**

(A)  Loss resulting directly from dishonest or fraudulent acts committed by an Employee of the Insured, whether committed alone or in collusion with others, with intent:
(a)   to cause the Insured to sustain such a loss, or
(b)   to obtain Financial Benefit for the Employee of the Insured, or another person or entity acting in collusion with such Employee.

Notwithstanding the foregoing, however, it is agreed that with regard to Trading and Lending, this bond covers only loss resulting from dishonest or fraudulent acts committed by an Employee of the Insured, provided that the Employee acted with the intent to cause the Insured to sustain a loss and to obtain a Financial Benefit for the Employee.

As used throughout this Insuring Agreement (A):

* * *

Trade means any actual, fictitious, genuine or non-genuine, authorized or unauthorized purchase (other than any repurchase agreement or reverse repurchase agreement), exchange or sale transaction, with or without the knowledge of the Insured in the name of the Insured or otherwise, whether or not represented by an indebtedness or balance shown to be due the Insured on any account.  Trading means the process by which a Trade is made.

The policy excludes all loss resulting directly or indirectly from a customer's account, however, unless covered under Insuring Agreement (A).  Thus, the policy excludes:

(i)   Loss resulting directly or indirectly from transactions in a customer's account, whether authorized or unauthorized, except the unlawful withdrawal and conversion of Money, securities or precious metals, directly from a customer's account by an Employee provided such unlawful withdrawal and conversion is covered under Insuring Agreement (A).

Oppenheimer contacted CNA to make a policy claim after learning about the state plaintiffs' loss.  It says that CNA repeatedly has expressed an intent to deny coverage.  CNA says that (1) Oppenheimer did not provide it with a timely notice of the claim, and (2) the claim is not covered under the policy.

3

### 3. This Case

Oppenheimer filed a complaint seeking a declaration that it filed a timely notice and that the claim is covered under the policy. In response, CNA says that the Court should not accept jurisdiction over this case because the Oppenheimer claim is premature.

### B. Procedural History

On February 24, 2004, the state plaintiffs filed the complaint against Oppenheimer and Locklear in Wayne County Circuit Court.[4]

On January 31, 2005, Oppenheimer filed this case under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that CNA must indemnify Oppenheimer should it be adjudged liable in the state case. Oppenheimer later amended the complaint to substitute National Union for AIG Technical Services, Inc., as a co-defendant.

On April 29, 2005, CNA filed the pending motion, which National Union later joined.

## III. Analysis

### A. Legal Standard

Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The district courts have discretion to render a declaratory judgment. Id. The Court of Appeals for the Sixth Circuit has stated that a district court must apply a five-factor balancing test when determining whether to exercise its discretion: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory

---

[4] The parties say that the state case is pending and in the pre-trial stage.

remedy is being used merely for the purpose of "procedural fencing" or "to race for res judicata"; (4) whether use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 813 (6th Cir. 2004); Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins., 791 F.2d 460, 462 (6th Cir. 1986).

### B.  Discussion

Oppenheimer seeks a declaration that CNA must indemnify Oppenheimer if it loses the state case. CNA says that coverage cannot be determined until Oppenheimer has established a loss, which depends on the results of the state case.

CNA's argument is well taken. Under the bond policy, CNA must indemnify Oppenheimer for a valid loss. As CNA notes in its brief, there are three possible outcomes to the state case under which policy coverage would not apply. First, if Oppenheimer successfully defends the state case, it cannot establish loss under the policy. Second, if the state plaintiffs are successful on a theory that falls outside of Insuring Agreement (A), CNA is not required to indemnify Oppenheimer. Finally, if the state plaintiffs are successful on a theory that falls under Insuring Agreement (A) but are awarded an amount less than the policy deductible, CNA need not indemnify Oppenheimer.

Whether Oppenheimer has suffered a loss under the policy is a question effectively pending in the state case. Because Oppenheimer's complaint seeks a declaration of CNA's duty to indemnify, a declaratory judgment will require this Court to address the very issue of loss pending in the state case. The Sixth Circuit prefers district courts decline jurisdiction in such cases. See Bituminous Cas. Corp., 373 F.3d at 816 ("[T]he district

court. . . [knew] that two actions were pending in the state courts. . . . Therefore, the district court should have recognized the possibility that it would render a judgment inconsistent with the state court on that issue. We conclude that considerations of comity weigh against exercising jurisdiction."); Manley, Bennett, 791 F.2d at 463 ("declaratory judgment actions seeking advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.").

In this case, only the third factor weighs in Oppenheimer's favor. This action does not give the appearance of a race to res judicata because Oppenheimer waited almost a full year before filing it. Therefore, the Court gives Oppenheimer the "benefit of the doubt that no improper motive fueled the filing of this action." Bituminous Cas. Corp., 373 F.3d at 814.

The other four factors clearly weigh against Oppenheimer. First, a declaratory judgment will not settle the controversy between the parties because the issues are speculative. Oppenheimer impermissibly seeks an advisory opinion that if the state court finds a loss, CNA will indemnify it. Oppenheimer must wait for loss to be established before the Court can decide if policy coverage is required. Second, a judgment will not clarify the legal relationship between the parties because, again, their relationship depends on the outcome of the state case. Third, a judgment implicates comity issues because deciding the loss issue will wrongfully encroach upon the state court's jurisdiction over the state law claims. Finally, waiting until the conclusion of the state case is the better alternative to a declaratory judgment because the state plaintiffs may not establish loss, rendering any action against CNA moot. See Allstate Ins. Co. v. Green, 825 F.2d 1061, 1063 (6th Cir. 1987) (internal citation omitted) ("where complex factual issues are present

and the action parallels a state court action arising from the same facts and where alternative remedies are available [i.e., an action for indemnity after conclusion of the state court suit], declaratory judgment is inappropriate.").

## IV. Conclusion

Because the Sixth Circuit's five factors weigh heavily against Oppenheimer and because the Sixth Circuit discourages district courts from accepting jurisdiction in such cases, CNA's motion to dismiss is GRANTED and the case is DISMISSED.

SO ORDERED.


Dated: July 25, 2005

       s/Avern Cohn  
       AVERN COHN  
     UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, July 25, 2005, by electronic and/or ordinary mail.

       s/Julie Owens  
       Case Manager, (313) 234-5160